UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS WAYNE VESEY,

Petitioner,

CASE NO. 2:09-CV-14207
v.                                          HONORABLE ARTHUR J. TARNOW

DEBRA SCUTT,

Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF APPEALABILITY

**I.      Introduction**

This is a federal habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Dennis Wayne Vesey ("Petitioner") challenges his convictions for three counts of first-degree murder (under alternate theories of premeditated and felony murder), MICH. COMP. LAWS § 750.316, conspiracy to commit armed robbery, MICH. COMP. LAWS § 750.529, and conspiracy to commit first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), felon in possession of firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, which were imposed following a jury trial in the Washtenaw County Circuit Court.[1] He was sentenced to concurrent terms of life imprisonment without the possibility of parole on the murder convictions, 20 to 30 years imprisonment on the conspiracy convictions, and

---

[1]The jury also convicted Petitioner of first-degree home invasion and armed robbery, but the trial court vacated those convictions based on the felony murder convictions.

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

3 years 4 months to 7 years 6 months imprisonment on the felon in possession conviction, as well as a consecutive term of two years imprisonment on the felony firearm conviction in 2005.

Petitioner raises claims concerning the exclusion of possible evidence of third-party guilt, the conduct of the prosecutor, the admission of certain police testimony, the effectiveness of trial counsel, and the denial of a motion for new trial based upon newly-discovered evidence. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court also grants in part and denies in part a certificate of appealability.

## II.    **Facts and Procedural History**

Petitioner's convictions arise from the home invasion, armed robbery, and shooting deaths of Taurus Hill and his girlfriend, Tayquelea Roberson, and the suffocation death of their infant son, Taurus Hill Jr., at their apartment in Ypsilanti, Michigan on April 5, 2003. The Court adopts the statement of facts set forth by the Michigan Court of Appeals on direct appeal, which is presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> These consolidated appeals[FN3] arise from the convictions of brothers and codefendants, Dennis and Dameko Vesey, for the murders of Taurus Hill (Hill) and his girlfriend, Tayquelea Roberson (Roberson), on April 5, 2003, at an apartment complex located on South Harris Road in Ypsilanti, Michigan.[FN4] Defendants were also charged and convicted for the death of Hill and Roberson's infant son, Taurus Hill, Jr. (dob: January 8, 2003). The infant died following the shooting of his mother, Roberson, who fell on the infant suffocating him.

> FN3. *People v. Vesey*, unpublished order of the Court of Appeals, entered January 24, 2006 (Docket Nos. 266617 and 266618).

> FN4. Defendants' cousin, Michael McGaha, was a codefendant in the murder trial, but was acquitted of all charges by a separate jury.

2

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

Hill was a known drug dealer in the Ypsilanti area. On the evening of April 4, 2003,
Hill and Roberson were at home in their apartment with their infant son, Taurus, Jr.,
and three other minor children: Tyranique Hill (dob: February 27, 1994), Dakaisia
Roberson (dob: June 25, 1997), and Jasmine Harris (dob: January 17, 1998).[FN5]
Tyranique indicated that she and Dakaisia and Jasmine were in the living room
watching television. Tyranique reported that there was a knock at the front door. Hill
answered the door and permitted a man that she did not know to enter the apartment.
The man sat at the kitchen table with Hill and conversed for a brief period. Hill left
the table and went into the bedroom, returning within a few minutes. Shortly
thereafter, the man left the apartment. During her second interview with police,
Tyranique reported the same man returned to the apartment but did not enter,
remaining in the doorway speaking briefly with Hill.

> FN5. Tyranique is Taurus Hill's daughter with Michelle Cowan. Dakaisia is
> the daughter of Roberson and Roosevelt Williams. Jasmine is Roberson's
> niece.

In the early morning hours of April 5, 2003, while Tyranique and the children
remained on the couch watching television, there was a third knock on the apartment
door. Tyranique saw Hill glance out the window before opening the door. Once Hill
began to open the door Tyranique observed two masked men rush into the apartment.
One of the men began physically fighting Hill and he fell on the floor by Tyranique.
Tyranique and the other two girls ran and hid in bedrooms in the apartment, but
could hear a man in the master bedroom confronting Roberson and demanding
money. Tyranique also saw one of the men pointing a gun at Roberson. Tyranique
heard her infant brother crying from the master bedroom. When she tried to retrieve
the infant, one of the masked men yelled at her and she fled the room and returned
to another bedroom and closed the door.

Tyranique heard four shots. She identified two of the shots as coming from the living
room and the remainder from the master bedroom, but was unsure of the order of
occurrence. She then heard water running in the kitchen and the closing of the front
door. Tyranique waited and then gathered Dakaisia and Jasmine, instructing them to
dress and led them out of the apartment. The girls initially hid when they exited the
apartment because Tyranique observed two vehicles coming out of the adjacent
trailer park and feared it might be the masked men returning. She described the
vehicles as having tinted windows. One of the vehicles was "white and long" and
similar to her father's car. The second vehicle was described as "cute, a nice car,"
which was loudly playing Rap music. The girls walked down Harris Road to Ford
Boulevard and tried to go into a local party store, but were unsuccessful because it
had closed for the night. The girls hid a second time when they saw another

approaching vehicle; again fearing it contained the masked men. The girls, led by Tyranique, continued walking until they found an open pizza parlor. Tyranique requested use of the telephone and, with the assistance of a store employee, phoned 911 and reported the events.

When interviewed by police, Dakaisia's and Jasmine's version of the events was similar to Tyranique's as they both described the entry into the apartment of two masked men with handguns demanding money. While the girls could only provide a limited description of the clothing the men wore, Tyranique described one of the perpetrators as being larger than the other and that one of the men had braids hanging below his mask to his shoulders. Tyranique provided details regarding the masks, describing them as thin enough to see through, like nylons or stockings. Although Tyranique was unable to provide a more detailed facial description of the perpetrators she indicated that she believed one of the men was the same individual that had entered the apartment earlier in the evening and sat at the kitchen table with Hill, based on her recognition of his voice. At trial, when presented with a photo array, Tyranique identified codefendant Michael McGaha as the man she observed with Hill at the kitchen table. However, a police officer involved in the investigation, Detective Everette Robbins, reported that when interviewed and presented photographs by the police at the time of these events, Tyranique identified defendant Dameko Vesey as the individual seated at the kitchen table with Hill before the murders.

Most neighbors of the victims were not forthcoming or cooperative with police regarding their observations immediately before the murders in the apartment complex and parking lot. Neighbors initially declined to speak or later admitted lying to police because they did not want to be involved due to fear of retaliation or disinterest. However, neighbors of Hill and Roberson, Joyce Jordan and her daughter Tanet Jordan, revealed that they heard arguing in the parking lot shortly before hearing gunshots. Tanet indicated that she saw Dennis Vesey speaking with another resident of the complex, Nerissa Pittman, and also observed Dennis Vesey arguing with Hill. Tanet reported seeing Dennis Vesey driving a silver or tan SUV and observed Pittman run past her apartment window immediately following the gunshots. Joyce also reported seeing Hill, Roberson and Dennis Vesey arguing in the parking area of the apartment complex before the gunshots occurred. After Hill and Roberson walked away, Joyce reported seeing Dennis Vesey go to his vehicle and retrieve a gun. Joyce observed two other individuals in defendant's vehicle, one was in the rear passenger area and one, who looked like Dameko Vesey, was in the front passenger seat and was also holding a gun. Joyce stated that she observed Pittman walk past her window in the direction of the apartments at the back of the building, where Hill and Roberson's apartment was located, and that Dennis Vesey and the

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

others followed in the same direction. Within minutes Joyce heard gunshots and saw Dennis Vesey's vehicle and another vehicle pull out of the parking lot. Joyce acknowledged that she had consumed alcohol that evening and lied at the preliminary examination because she did not want to get involved in the police investigation.

The primary witness, Nerissa Pittman, was also charged as an accomplice in this matter. Pittman pleaded guilty to second-degree murder, MCL 750.317, and agreed to testify against defendants. She had not yet undergone sentencing while defendants' trial was in progress. At the time of the murders, Pittman was residing in an apartment within the complex with her minor child, her mother and younger siblings. Pittman stated that approximately a week before the murders she commented to another neighbor, Darius Frazier, that Hill had a lot of money but had never been robbed. Shortly thereafter, Pittman claimed to observe Frazier give two handguns to defendant Dennis Vesey.

On April 4, 2003, Pittman claimed that she was with a male friend, Jovan Hurston, at the trailer where he was residing. Pittman asserted her minor son accompanied her and that she engaged in sexual relations with Hurston and smoked marijuana. Later that night or very early in the morning on April 5, 2003, Pittman asserted she phoned Dennis Vesey to secure additional marijuana and was informed that he was parked at the South Harris apartments. Pittman asked Hurston to drive her to her mother's apartment so that she could procure items to spend the night. Hurston transported her to the complex but remained in his vehicle. Pittman approached Dennis Vesey's car, and he requested that Pittman assist in the robbery by knocking on Hill's apartment door. Pittman claimed that she frequently borrowed cigarettes from Roberson, implying she would be recognized by Hill and able to gain entry into the apartment. Pittman knocked on the apartment door. When Hill opened the door, Pittman asserted that defendants and McGaha rushed into the apartment. Pittman averred that none of the participants in the robbery, including her, were wearing masks. Pittman opined that the handguns carried by Dennis Vesey and McGaha appeared to be the same as the handguns provided by Frazier. Pittman entered the apartment and went to the back bedroom and took some ecstasy pills. McGaha was confronting Roberson in the master bedroom regarding the location of money in the apartment. Dameko Vesey was observed "rambling" through the apartment, while Dennis Vesey was struggling with Hill in the front room. As Pittman was leaving the apartment, she heard two gunshots. She proceeded to her mother's apartment, retrieved a diaper bag, returned to Hurston's waiting vehicle and left with him, returning to his trailer. She did not return to the apartment complex until the following morning. Pittman acknowledged that she lied to police when initially questioned regarding the events of that evening.

5

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

*People v. Vesey*, No. 266618, 2008 WL 723918, *1-3 (Mich. Ct. App. March 18, 2008) (unpublished).

Following his convictions and sentencing, Petitioner, through counsel, filed an appeal of right with the Michigan Court of Appeals raising several claims of error, including those presented on federal habeas review.  The court denied Petitioner relief and affirmed his convictions.  *Id.* Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *People v. Vesey*, 482 Mich. 896, 753 N.W.2d 173 (2008).

Petitioner, through counsel, thereafter filed his federal habeas petition raising the following claims as grounds for relief:

I.      The trial court's exclusion of evidence of third-party guilt denied Petitioner his right to present a defense and to a fair trial.

II.     The prosecutor engaged in misconduct and deprived Petitioner of a fair trial by vouching for the credibility of Nerissa Pittman, her key prosecution witness, and arguing facts not in evidence about Tyranique Hill's impression of the assailants.

III.    The trial court deprived Petitioner of his rights to confrontation and a fair trial by allowing a detective to testify that the police investigation revealed that no one other than the defendants had committed the crimes.

IV.     He was denied his right to the effective assistance of counsel by trial counsel's failure to produce exculpatory witnesses, Maurice Lashawn Robinson and Cynthia Mack, at trial.

V.      The trial court deprived him of due process and the effective assistance of counsel by denying his motion for new trial based upon newly-discovered evidence contained in letters from Nicholas Ross to co-defendant Dennis Vesey and from Nerissa Pittman to Sharmik Willis.

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

Respondent has filed an answer to the petition contending that it should be denied because the

claims are not fully exhausted, are barred by procedural default, and/or lack merit.  Petitioner has

filed a reply to that answer.

**III.**    **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the

following standard of review for federal habeas cases brought by state prisoners:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  *Id.* at 409; *see also Pinchon v. Myers*, 615 F.3d 631,

638–39 (6th Cir. 2010) (same).  A federal habeas court may not "issue the writ simply because that

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410–11.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). The AEDPA thus "imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state[-]court's decision." *Harrington v. Richer*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized that it "bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state[-]court's decision conflicts with" the Supreme Court's precedents. *Harrington*, 131 S. Ct. at 786. Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S.

8

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

307, 332 n. 5 (1979)) (Stevens, J., concurring in judgment)).  Therefore, in order to obtain habeas

relief in federal court, a state prisoner is required to show that the state court's rejection of his claim

"was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.

A state court's factual determinations are presumed correct on federal habeas review.  *See*

28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and

convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas

review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, _ U.S. _, 131

S. Ct. 1388, 1398 (2011).

## IV.   Analysis

### A.   Exhaustion and Procedural Default

As an initial matter, Respondent contends that some of Petitioner's claims are unexhausted

or procedurally defaulted.  A prisoner filing a petition for a writ of habeas corpus under 28 U.S.C.

§2254 must first exhaust all state remedies.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)

("state prisoners must give the state courts one full fair opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review process); *Rust v.*

*Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  To satisfy the exhaustion requirement, the claims must be

"fairly presented" to the state courts, meaning that the petitioner must have asserted both the factual

and legal bases for the claims in the state courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.

2000); *see also Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *McMeans*).  The

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

claims must be presented to the state courts as federal constitutional issues. *Koontz v. Glossa*, 731

F.2d 365, 368 (6th Cir. 1984).

Even assuming that Petitioner has not properly exhausted all of his habeas claims in the state

courts, the Court declines to dismiss the petition on such a basis.  While the exhaustion requirement

is strictly enforced, it is not a jurisdictional prerequisite for bringing a habeas petition.  *See*

*Granberry v. Greer*, 481 U.S. 129, 134-35 (1987); *Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir.

2000).  For example, an unexhausted claim may be addressed if pursuit of a state court remedy

would be futile, *see Witzke v. Withrow*, 702 F. Supp. 1338, 1348 (W.D. Mich. 1988), or if the

unexhausted claim is meritless such that addressing it would be efficient and not offend federal-state

comity. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2)

(habeas petition may be denied on the merits despite the failure to exhaust state court remedies).

Such is the case here.

Additionally, as to any procedural default, it is well-settled that federal courts on habeas

review "are not required to address a procedural-default issue before deciding against the petitioner

on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*,

520 U.S. 518, 525 (1997)).  The Supreme Court has explained the rationale behind such a policy:

 "Judicial economy might counsel giving the [other] question priority, for example, if it were easily

resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated

issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the substantive issues are easier to

resolve.  Accordingly, the Court shall proceed to the merits of Petitioner's claims.

10

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

### B.   Exclusion of Evidence - Third-Party Culpability

Petitioner first asserts that he is entitled to habeas relief because the trial court erred and deprived him of the right to present a defense by excluding potential evidence of third-party guilt. Specifically, he contends that he should have been allowed to present additional testimony from witnesses, namely Tanet Jordan and Tiffany Juneau, regarding out-of-court statements allegedly made by Maurice Robinson and Antone Swanson concerning the murders.

Claimed trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69–70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The right of an accused to present a defense, however, has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967); *see also Holmes v. South Carolina*, 547 U.S. 319, 329-31 (2006) (state rule excluding evidence of third party guilt based solely on strength of prosecution's case violated defendant's right to present a defense); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (exclusion of hearsay statements critical to

11

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

defense which "bore persuasive assurances of trustworthiness," coupled with refusal to permit cross-examination of the declarant, violated defendant's right to due process).

Nonetheless, "a defendant's right to present evidence is not unlimited, but rather it is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissable under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Holmes*, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury"). State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (internal citations omitted). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interest in the criminal trial process." *Id*. When deciding if the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. The question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers*, 410 U.S. at 302.

The Michigan Court of Appeals denied relief on this claim, stating in pertinent part:

Defendants assert numerous errors by the trial court in precluding the admission of evidence pertaining to the culpability of individuals, other than defendants, in the robbery and murder of Hill, Roberson and their infant son. This Court reviews a trial

12

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

court's rulings regarding the admission of evidence for an abuse of discretion. *People v. Bauder*, 269 Mich App 174, 179; 714 NW2d 506 (2005). An abuse of discretion occurs when a trial court's determination is outside the range of reasonable and principled outcomes. *People v. Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). In addition, a trial court's evidentiary rulings, which implicate a defendant's right to confrontation and to present a defense, are reviewed de novo by this Court. *People v. Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002); *People v. Beasley*, 239 Mich App 548, 557; 609 NW2d 581 (2000).

Specifically, defendants contend the trial court erred by limiting testimony by Gwendolyn Hill, Taurus Hill's mother, regarding a previous break-in to Hill and Roberson's apartment by Louis Fairley and his threatening behavior to Roberson. Defendants further challenge the exclusion of testimony by Gwendolyn Hill regarding injuries to the hand and three "teardrop" tattoos she observed on Maurice Robinson a week or more after the murders, which were interpreted as signifying his involvement in the crimes. Defendants contend that Maurice Robinson's status as a potential suspect in these murders was further implicated by Tanet Jordan's testimony that she spoke with him by telephone the morning of the murders. Robinson broke a breakfast date with Tanet stating he could not approach the apartments due to police cordoning off the area. Robinson reportedly indicated he had spent the night riding around with "Juan" and implied detailed knowledge of the killings.[FN6]

> FN6. Although Joyce and Tanet Jordan indicated they knew Dennis Vesey by the name "Juan," defendants suggest that other possible suspects observed in the area that evening were also known by that name.

We note that Gwendolyn Hill did testify that her son and Fairley were friends but recently experienced a falling out and that Fairley's nickname was "Killus." Defense counsel was also able to establish through this witness that her son was familiar with other individuals identified in the apartment complex parking lot at the time of the murders, including Maurice Robinson and Tomeko Buyers. Gwendolyn Hill was not precluded from testifying regarding her observation of Maurice Robinson after the murders and that he evidenced a wrist injury. However, the trial court did suppress testimony by Gwendolyn Hill that comprised hearsay. Specifically, it was determined that this witness did not have personal knowledge regarding the details of the alleged problems that had occurred between Hill, Roberson and Fairley. The trial court also precluded testimony by this witness regarding the street meaning of Maurice Robinson's teardrop tattoos as "signal[ing] killings or murders." Notably, defendants' counsel elected not to question Robinson when he was brought to court

13

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

regarding his tattoos and any attribution to their meaning. Defense counsel argued for the admissibility of this evidence, stating in relevant part:

> Because the defense is that someone else did it my position is that regardless of the hearsay rule I'm entitled to introduce the evidence as part of due process right to present a defense. The witness gave information to the police about Fairley-people who are potential suspects at this time.

However, the trial court rejected this argument, ruling:

> To the extent there is any relevancy and I'm assuming for a moment that there may be it may only be admitted as admissible evidence. That is hearsay. There is no hearsay exception for what you are trying to offer. If there's some other person who may have been culpable here you certainly have the right to bring in witnesses who have personal knowledge of that motivation or that conduct. But this witness [Gwendolyn Hill] was not a proper witness to offer any theory in that regard.

Defendants also argued that the trial court erred in precluding Tanet Jordan's testimony regarding statements made to her by Maurice Robinson, implying his involvement in the crimes. We would first note that the statements allegedly made by this individual to Tanet are not readily discernable as exculpatory for defendants. Maurice Robinson indicated he spent the night riding around with "Juan." This, coupled with his alleged knowledge of details of the murders, serves more to inculpate than exculpate defendant Dennis Vesey who is also known by the name "Juan." In addition, the statements attributed to Maurice Robinson by Tanet are merely conclusory and based on assumption. The alleged statement does not acknowledge any involvement in the crime by Robinson. Most importantly, the trial court properly ruled the testimony of Tanet regarding these statements would constitute inadmissible hearsay. Maurice Robinson was brought to court and questioned by counsel outside the presence of the jury. He denied the statements attributed to him by Tanet and denied even knowing her. Based on this denial, defendants' counsel sought to allow Tanet to testify regarding the statements in order to impeach the testimony of Maurice Robinson. However, the trial court properly denied this request, recognizing that Tanet's testimony would comprise hearsay.

Defendants also challenge the failure of the trial court to permit testimony by Tiffany Juneau. While both were incarcerated in the Washtenaw County jail, Juneau spoke with Antone Swanson. Swanson reportedly told Juneau that he drove Hill and

14

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

Roberson's killers to the scene and picked them up, but refused to name them. Juneau provided this information to detectives in a letter. Defendants claim that this evidence is relevant and exculpatory because other witnesses, such as Tanet Jordan, identified Swanson as being in the apartment complex parking lot immediately before and after the murders occurred. Purportedly, Swanson also acknowledged, several weeks before the murders, to Roosevelt Williams[FN7] that he had a "lick to hit." At this same time a friend of Swanson's was attempting to sell a .380 pistol, which was the same caliber handgun as used in the homicides but which was never recovered.

> FN7. Roosevelt Williams is the father of Dakaisia Roberson, who was present in the apartment at the times of the murders.

Similar to the arguments pertaining to the alleged admissions by Maurice Robinson to Tanet Jordan, defendants contended there existed a third-party culpability exception for hearsay pertaining to statements purportedly made by Antone Swanson to Tiffany Juneau. The trial court made arrangements for the detention and transport of Juneau, who was in Louisiana, to Michigan to testify regarding her letter to detectives. However, the trial court first brought in Swanson from prison to provide testimony outside the presence of the jury to determine the admissibility of Juneau's anticipated testimony. Swanson denied making any such statements and asserted that he did not know Juneau. In fact, Swanson averred that he was not at the jail for any length of time because he was given and passed two polygraph tests and "[b]onded out immediately." Defendants' counsel argued the admissibility of the testimony because it supported "the defense [theory of] third party culpability and the inference the jury could draw is that others had the motive and opportunity and, in fact, even made admissions to involvement. And, therefore, makes the defense theory more likely true ... [as] an issue of simple relevance." The trial court, once again, properly rejected this argument, determining the statement merely comprised inadmissible hearsay.

* * *

Defendant Dameko Vesey further asserts that the identification by witnesses of other viable suspects in the vicinity of the crime, coupled with the lack of physical evidence substantiating defendants' presence in Hill and Roberson's apartment and the acquittal of codefendant McGaha further bolsters the importance and necessity of the admission of the proffered statements to support defendants' assertion of third-party culpability.

In support of their contention that the trial court erred in precluding the proffered testimony based on hearsay, defendants primarily rely on two cases: *Chambers v.*

15

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

*Mississippi*, 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973), and *People v. Barrera*, 451 Mich 261; 547 NW2d 280 (1996). In *Chambers*, the United States Supreme Court determined the lower courts had erred in excluding evidence of a third party's admission of guilt that was deemed critical to the defense and which "bore persuasive assurances of trustworthiness." *Chambers, supra* at 302. The Court ruled, "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id*. However, the factual circumstances of *Chambers* are readily distinguishable from this case.

In *Chambers* the defendant was on trial for murder. Another individual provided a written confession of his own guilt for the murder, fully exculpating the defendant, but then later retracted the confession. In addition, this third party acknowledged to three other independent persons that he had committed the murder. These admissions were precluded by the trial court based, in part, on the absence of a hearsay exception in that jurisdiction for statements against penal interest and the defendant was subsequently convicted. The Supreme Court determined "[t]he hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." *Id*. at 300. Specifically, the Court noted that the "confessions [were] made spontaneously to a close acquaintance shortly after the murder" and that "each one was corroborated by some other evidence." *Id*. In addition, the Court observed that "[t]he sheer number of independent confessions provided additional corroboration for each" with the confessions being "in a very real sense self-incriminatory and unquestionably against interest." *Id.* at 300-301.

In *Barrera*, the trial court was found to have erred by excluding statements made by a codefendant that were offered as exculpatory evidence. Such error was not deemed to be harmless. *Barrera, supra* at 263-264. Again, the factual circumstances of this case are distinguishable from defendants' situation resulting in an overly broad interpretation and attempted use of this ruling to support their assertion of error. In *Barrera*, a codefendant, Copeland, admitted guilt in reference to the stabbing and murder of a prostitute. Copeland acknowledged that only he stabbed the victim and that her murder was spontaneous and the result of his mistaking the victim for his ex-girlfriend while under the influence of drugs and alcohol. This admission was not only exculpatory regarding the actions of Copeland's codefendants but further supported their defense regarding the lack of premeditation for the killing. The trial court ruled that Copeland's statement "was not exculpatory" with regard to his codefendants and "that there was insufficient corroborating evidence of statements" with regard to their trustworthiness. *Id*. at 285. Our Supreme Court reversed the lower court, finding "that the critical portions of Copeland's statement ... were

16

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

against his penal interests and should be admitted on retrial." *Id*. at 297-298. However, the Court clarified the limits of the ruling, stating:

> [W]e do not hold that a trial court should allow a defendant to present unreliable evidence.... Instead, we hold that a trial court cannot place too many hurdles in front of admitting evidence that is not only crucial to the defense theory and uncontradicted by any other evidence in the case, but also has some commonsense basis of trustworthiness. [*Id*. at 297 (citation omitted)].

Relying on prior federal decisions, the *Barrera* Court discussed the importance of determining whether a statement is against penal interest, noting "[i]t must actually assert the declarant's own culpability to some degree-it cannot be a statement merely exculpating the accused." The Court also reviewed the factors involved in determining the trustworthiness of the statement as encompassing "two distinct elements ... [T]he statement must actually have been made by the declarant, and it must afford a basis for believing the truth of the matter asserted." *Id*. at 273-274 (citations omitted).

Applying the case law relied on by defendants to the statement attributed to Swanson by Juneau; we find the trial court did not err in precluding the proffered testimony. The purported admission by Swanson to Juneau that he picked up and dropped off the individuals that murdered Hill and Roberson was made to a jail inmate, did not involve a statement to police and did not serve to inculpate Swanson or exculpate defendants. Following the guidelines established in *Barrera* the statement could not be construed in a manner that would be incriminating as a statement against penal interest. The vague statement does not, in any manner, exculpate defendants as it neither confirms nor denies their involvement in the crimes. Further, there is no corroboration regarding either the existence or content of the alleged statement to Juneau given Swanson's absolute denial that it occurred.

In reference to the alleged statements made or overheard by Roosevelt Williams, it is problematic that there exists no record evidence that defendants ever sought to procure or introduce testimony by Williams on this matter. In addition, the purported statements were not sufficiently incriminating by nature and were completely uncorroborated. * * *

As a result, defendants' reliance on the alleged statements . . . as exculpatory and requiring admission to support their assertion of third-party culpability is misplaced. This Court has previously upheld a trial court's determination to exclude evidence pertaining to third-party culpability because it was merely speculative. *People v.*

17

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

> *McCracken*, 172 Mich App 94, 98-99; 431 NW2d 840 (1988). This Court's prior ruling that evidence, which tends to incriminate another person is admissible if it creates more than a mere suspicion that another person was actually the perpetrator, *People v. Kent*, 157 Mich App 780, 793; 404 NW2d 668 (1987), is not applicable to the factual circumstances of this case. In this appeal, any evidence of the culpability of a third-party was merely speculative and based solely on suspicion. As a result, the trial court properly excluded these statements and did not violate defendants' due process right to present witnesses in their defense.

*Vesey*, 2008 WL 723918 at *4-8 (discussion of post-trial letters presented in new trial motion omitted).

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, to the extent that Petitioner asserts that the trial court erred in excluding the testimony under the Michigan Rules of Evidence or other Michigan law, he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See, e.g., Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Second, Petitioner has not shown that the exclusion of the proposed testimony violated his constitutional rights. The trial court's rulings were reasonable and meant to preclude the admission of hearsay under state law. The hearsay statements that the defense sought to admit did not fit within any exceptions to the hearsay rule. Those statements were also not reliable given that the declarants, Maurice Robinson and Antone Swanson, denied making them and there was no other evidence to corroborate them. While evidence that tends to prove a person other than the defendant

18

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

committed a crime is relevant, there must be some connection between the other alleged perpetrator and the crime, not mere speculation by the accused. *See, e.g., DiBenedetto v. Hall*, 272 F.3d 1, 8 (1st Cir. 2001).

The hearsay statements at issue were also not critical to the defense. Maurice Robinson's purported statement that he spent the night riding around with "Juan" and his alleged knowledge of the crime did not exculpate Petitioner or the other defendants, did not necessarily inculpate Robinson in the murders, and potentially inculpated Petitioner given the trial testimony that he was also known as "Juan." Antone Swanson's purported statement that he drove the killers to the scene and picked them up, without naming those individuals, similarly did not exculpate Petitioner or the other defendants nor inculpate Swanson in the actual shootings.

More importantly, Petitioner was able to present evidence in support of his alibi defense and his claim that other people committed the crime. Petitioner himself testified at trial and denied committing the crime. He testified that he had dinner with his brother and Russell Marks at Red Lobster, went to his grandmother's house for a period of time, and then returned home where he watched television and went to bed. When he woke up the next morning, he played basketball and later attended his niece's birthday party at a skating rink. Petitioner's neighbor, Patricia Hollie, testified that testified that she saw Petitioner's vehicle parked outside their apartment building during the night of the crime.

Additionally, Russell Marks testified that he had dinner with Petitioner and his brother at Red Lobster that day and that he saw Dameko Vesey drinking at his grandmother's house later that night. Dameko Vesey's girlfriend and her sister testified that he was home at the time of the

19

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

shootings.  Defense counsel was also able to elicit testimony that several other men, including

Antone Swanson, Maurice Robinson, Tameko Buyers, Ricardo Pickens aka Duan Manson, men

named Tango and Black, and possibly an unknown third man, were at the apartment complex that

evening and Taurus Hill's mother testified that her son had a dispute with Louis Fairley aka Killus

shortly before the shootings.  The parties also stipulated that there was no DNA or similar physical

evidence linking Petitioner or his co-defendants to the crime scene.  The jury was thus well aware

of Petitioner's defense that he did not commit the charged acts and that others were responsible for

the murders.

Petitioner was also able to challenge the credibility of the prosecution's witnesses,

particularly Nerissa Pittman, point out inconsistencies in the testimony, and argue that those

conflicts created reasonable doubt about the identities of the perpetrators.  The record thus reveals

that Petitioner was able to present a meaningful defense at trial.  *See, e.g., Wynne v. Renico*, 606

F.3d 867, 870–71 (6th Cir. 2010) (state trial court did not violate petitioner's right to present a

defense at murder trial by excluding propensity evidence of third party guilt where defendant had

opportunity to present other, proper evidence in support of defense theory).  Petitioner has failed to

establish that the trial court's rulings violated his right to present a defense or otherwise rendered his

trial fundamentally unfair.

Petitioner cites *Holmes, supra* and *Chambers, supra*, in support of his constitutional claim.

However, nothing in those cases requires that a trial court allow the admission of untrustworthy

hearsay statements as potential evidence of third-party guilt in order to satisfy the Constitution.  *See,

e.g., United States v. Phillips*, 198 F. App'x 558, 561 (7th Cir. 2011) (citing *Holmes* and *Chambers*).

20

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

In *Holmes*, the Supreme Court held that a defendant's due process rights were violated by a state court's application of an evidentiary rule which precluded the defendant from introducing evidence of third-party guilt if the prosecution had introduced forensic evidence that, if believed, strongly supported a guilty verdict. The Court found that the rule improperly focused on the strength of the prosecution's case instead of the probative value or the potential adverse effects of admitting the defense's third-party guilt evidence. *Holmes*, 547 U.S. at 321, 331. In *Chambers*, a murder defendant called as a witness a man who had previously confessed to the murder. When the witness repudiated his confession, the defendant was not allowed to examine him as an adverse witness based upon a state rule which barred parties from impeaching their own witnesses. The defendant was also not allowed to introduce evidence that the witness had made self-incriminating statements to other people because state hearsay rules did not include an exception for statements against penal interest. The Supreme Court held that the limitation on cross-examination combined with the exclusion of the witness's out-of-court statements resulted in a constitutional violation. *Chambers*, 410 U.S. at 294–97, 302. In this case, the state trial court refused to admit the disputed testimony based upon Michigan's hearsay rule and a determination that the alleged out-of-court statements did not fall within an exception to that rule. The trial court's ruling and the Michigan Court of Appeals' decision affirming that ruling did not run afoul of *Holmes* or *Chambers*. Petitioner has failed to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

21

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

### C.   Conduct of the Prosecutor

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by arguing facts not in evidence regarding Tyranique Hill's impression of the assailants and by vouching for the credibility of Nerissa Pittman.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, _ U.S. _, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Petitioner claims that the prosecutor argued facts not in evidence regarding Tyranique Hill's impression of the assailants.  The Michigan Court of Appeals denied relief on this claim, finding that the issue was not preserved due to the lack of an objection at trial and that there was no error in the prosecutor's closing arguments.  As to the merits of the issue, the court explained:

> Defendant's first assertion of misconduct involves a statement by the prosecutor during rebuttal pertaining to the discrepancies in testimony between Tyranique and Pittman regarding whether the perpetrators wore masks. Notably, defense counsel raised discrepancies regarding this testimony in closing argument and impugned the veracity of Pittman. After the conclusion of closing arguments, defendants' counsel objected to the prosecutor's statement that Tyranique was mistaken regarding the masks suggesting the prosecutor's explanation for the discrepancy encompassed facts not in evidence.

22

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

Specifically, the prosecutor stated, in relevant part:

> Defense counsel says that you shouldn't believe Nerissa Pittman. That she's lying. They somehow think that I have pitted Nerissa Pittman's testimony against that of Tyranique Hill. Why? I'm telling you there is no conflict between Nerissa Pittman and Tyranique Hill. And I'm not saying Tyranique is a liar, she didn't see a mask on their face believe Nerissa Pittman. What I'm saying to you is that the Judge is going to read you an instruction that talks about the credibility of the witnesses and how you evaluate that. And one of those things that she's going to tell you is that sometimes witnesses are just wrong. And that doesn't mean you disregard all of their testimony. It just means about that one instance or that one issue they're wrong.
>
> And frankly I'm glad that Tyranique put masks on the mens [sic] faces that came into that house and killed her father because she doesn't have to think about the face that she saw do that. What she did was protect herself. She knows a little bit. She knows that there were braids involved. She can bring herself to identify the man that was there earlier. But that's not testimony that's in conflict with Nerissa Pittman. I'm not saying disregard Nerissa Pittman or disregard Tyranique Hill those things fit together.

In this instance, the prosecutor was responding to assertions by defense counsel that Tyranique's version of the events was correct and that Pittman was lying. "Although a prosecutor may not argue a fact to the jury that is not supported by evidence, a prosecutor is free to argue the evidence and any reasonable inferences that may arise from the evidence." *Callon, supra* at 330. The prosecutor's comments were merely an attempt to reconcile discrepant testimony. The prosecutor acknowledged the conflict and proposed an explanation without improperly vouching for the credibility of either witness. Because the prosecutor's comments were based on the evidence and merely instructed the jury to make their own determination of credibility, they were not improper.

*Vesey*, 2009 WL 723918 at *17-18.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. When considered in context, the prosecutor's remarks were proper rebuttal to defense counsel's argument that Pittman was lying and were made

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

in an effort to reconcile the discrepancies between Pittman's and Tyranique's testimony regarding whether the assailants were masked. The prosecutor focused her arguments on the evidence presented at trial and reasonable inferences therefrom. Petitioner has failed to show that the prosecutor erred or that any perceived error deprived him of a fundamentally fair trial.

Petitioner relatedly claims that the prosecutor improperly vouched for the credibility of Nerissa Pittman. The Michigan Court of Appeals denied relief on this claim, finding that the issue was not preserved due to the lack of an objection at trial and that there was no error in the prosecutor's argument. As to the merits of the issue, the court explained:

> Next, defendants assert the prosecutor engaged in misconduct by improperly vouching for the credibility of Pittman. Defendants rely again on discrepancies between the testimony of Tyranique and Pittman regarding the manner and number of perpetrators gaining entry to the apartment. In closing arguments, defendants' counsel referred to Pittman as both a "liar" and a "sociopath." The comments by the prosecutor pertaining to Pittman, to which defendants now object encompass the following:
>
>> And along those lines of, of the mask ... Taurus Hill wouldn't be stupid enough to look out and see masked men and let them in. And Nerissa Pittman wouldn't be stupid enough to make up a story with three unmasks [sic] men when it would be much easier to just go along with what Tyranique said. It would be much easier to put masks on those men. Put masks on herself and just run with that theory.
>>
>> Why would she go to the effort of making up this convoluted story that requires that she call Dennis Vesey earlier in the evening. That one to two weeks prior that she mentions to Darius Frazier that Taurus Hill's a person whose never been robbed but has money and drugs to steal.
>>
>> And I agree with defense counsel you have to evaluate the credibility of all of these witnesses. That's what your job is.

24

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

> When Nerissa Pittman left the stand was she trying to disrupt the proceedings or was she-was she scared. Did she come back in here and say I'm nervous, I'm scared. She is a person who has pled guilty to murder. She's not an angel. We're not putting her up in front of you saying listen to the angel that's come in here.
>
> I'm putting her up in front of you saying listen to the person who, who conceived this plan. Who knew Darius Frazier was a guy who could get things done. Who saw him give the guns to Dennis Vesey. Who knew Dennis Vesey had the guns. Saw Dennis Vesey with the guns the same guns that she saw Darius Frazier give him. And those people were murdered and they were robbed and she knew it was going to happen and she participated in it. So please evaluate her credibility. Why would she come in here and make up some convoluted difficult to tell story if that's not what happened.

In addition, in the opening of her rebuttal statement, the prosecutor acknowledged "that I'm going to convict bad men with a bad woman." In no manner, when taken in context, can the prosecutor's statements be construed as improper vouching for the credibility of this witness. In addition, the prosecutor specifically acknowledged that the determination of credibility was for the jury. As a result, the comments constituted merely the prosecutor's argument based on the facts in evidence and a response to defendants' very strong assertions impugning the veracity of Pittman regarding the facts in evidence supporting this witness's version of the events that transpired in the commission of the murders.

*Vesey*, 2008 WL 723918 at *18-19.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecutor's remarks were proper rebuttal to defense counsel's argument that Pittman was lying. The prosecutor based her arguments on the evidence presented at trial and reasonable inferences from that evidence. The prosecutor also acknowledged that her witnesses were not perfect and reminded the jurors that it was their job to make credibility determinations. Given such circumstances, it cannot be said that the prosecutor erred or engaged in misconduct which rendered the trial fundamentally unfair.

25

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

Moreover, any potential prejudice to Petitioner arising from the prosecutor's comments was

mitigated by the fact that the trial court instructed the jury about the elements of the crime and the

burden of proof, and explained that the attorneys' questions and arguments are not evidence. Jurors

are presumed to follow the trial court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799

(2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S.

57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow

it."). Habeas relief is not warranted on this claim.

### D.   <u>Admission of Evidence - Detective's Testimony</u>

Petitioner next asserts that he is entitled to habeas relief because the trial court deprived him

of his rights to confrontation and a fair trial by allowing Detective Everette Robbins to testify that

the police investigation revealed that no one other than the defendants entered the victims'

residence. The Michigan Court of Appeals summarized the facts pertinent to this issue as follows:

> The challenged testimony came during direct examination by the prosecutor. Her
> initial inquiry focused on whether the police "during the course of the investigation"
> had looked at or investigated any other potential suspects or individuals. Robbins
> verified that the police had investigated "many people" in conjunction with this
> crime and that "[a]ny tip" received "was followed up on appropriately." The
> prosecutor then proceeded to name nine different individuals, all of whom had been
> suggested by defendants as possible suspects or who were identified by witnesses as
> being in the area of the apartment complex at the time of the murders. Robbins
> verified that all these individuals had been interviewed, acknowledging that he may
> not have personally contacted all the named persons but that members of his
> department had conducted interviews. At this point, the prosecutor queried, "Did you
> receive any information that any of these individuals entered the apartment that I've
> just listed?" Counsel for defendants objected on the basis of hearsay and relevancy.
> The prosecutor responded that she was "not offering that for the truth of the matter
> asserted but just for purposes of directing the investigation and, and where that led
> him." Following a brief exchange between counsel, the trial court ruled the testimony
> admissible and instructed the jury:

26

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

This testimony is being offered not for its truth and you must not
consider it as such. This is offered to show what the investigator did
or didn't do as a result of it and that's the only purpose for which it's
offered and that's the only purpose for which you may consider it.

Robbins then answered, "Our investigation did not reveal that any other persons
other than the four co-defendants ever entered that apartment at any time."
Defendants' counsel again objected and the trial court instructed the prosecutor to
"ask what he did next."

At the conclusion of Robbins's testimony, counsel for defendant Dennis Vesey orally
requested the trial court strike the previously challenged testimony "based on
hearsay, it's irrelevant, it's not within his personal knowledge," and that the statement
constituted personal opinion. In the alternative, counsel sought the grant of a mistrial.
The trial court denied both motions based on its instruction to the jury of the "very
narrow purpose" for which the testimony could be used. The court also provided the
jury with instructions, at the conclusion of trial, defining what constituted evidence
and that testimony by police officers was to be judged by the same standards for
credibility as any other witness.

*Vesey*, 2008 WL 723918 at *9.

As noted, alleged trial court errors in the application of state evidentiary law are generally

not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67–68; *Serra*, 4 F.3d at

1354. Such an error only constitutes a federal constitutional violation justifying federal habeas relief

when it renders the proceeding "so fundamentally unfair as to deprive the petitioner of due process

under the Fourteenth Amendment." *McAdoo*, 365 F.3d at 494 (quoting *McGuire*, 502 U.S. at

69–70); *see also Wynne*, 606 F.3d at 871; *Bugh*, 329 F.3d at 512. The Confrontation Clause of the

Sixth Amendment to the United States Constitution specifically guarantees a criminal defendant the

right to confront the witnesses against him. *See* U.S. CONST. AMEND. VI; *Davis v. Alaska*, 415 U.S.

308, 315 (1973). The Supreme Court has held that the testimonial statement of a witness who does

not appear at trial, which is offered for the truth of the matter asserted, is inadmissible unless the

27

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59, 68 (2004).

The Michigan Court of Appeals denied relief on this claim finding that Detective Robbins' testimony about the police investigation was properly admitted, that the trial court instructed the jury about the proper consideration of the evidence, and that any perceived error was harmless. The court explained:

> In this matter, the detective's testimony that there was no physical evidence demonstrating that individuals other than codefendants had entered the victims' apartment was admitted to demonstrate the subsequent actions taken by police in their investigation and did not constitute hearsay. *See People v. McAllister*, 241 Mich App 466, 470; 616 NW2d 203 (2000). Because the trial court properly instructed the jury by providing a limiting instruction regarding how this testimony was to be used, and jurors are presumed to follow a trial court's instructions, we find no error. *People v. Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Moreover, even if the admission of this evidence was error it does not constitute grounds for vacating the verdict or granting a new trial. MCL 769.26; MCR 2.613(A); *People v. Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001). Given defense counsel's opportunity for cross-examination of the detective and the evidence of defendants' guilt, the prosecutor's isolated question and response by the witness was harmless.
>
> Defendants also objected to the testimony on the basis of relevancy and assert it should not have been admitted in accordance with MRE 402. "Materiality" of evidence, in relevancy determinations, comprises a requirement that the offered evidence is "related to any fact that is of consequence to the action." *People v. Mills*, 450 Mich 61, 67; 537 NW2d 909 (1995); *mod* 450 Mich 1212 (1995) (internal quotation marks omitted). In this case, defendants asserted they were not responsible for the killings and that unidentified third parties committed the offenses. The testimony of the detective was not offered to demonstrate the culpability of defendants but rather that police did focus on other potential suspects, who were eliminated through their investigation and led police to focus on defendants. Without this information, the jury would have been left to ponder whether the police conducted a thorough investigation given the assertions and implications by defendants that police failed to pursue evidence pertaining to other viable suspects. As such, this evidence was relevant to the case.

28

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

> Further, even if this Court were to determine that the evidence was irrelevant, reversal is neither required nor mandated. Witnesses identified defendants as being at the scene of the crime. Joyce Jordan observed Dennis Vesey retrieve a handgun from his vehicle shortly before gunshots occurred. Pittman, a confessed accomplice, identified defendants as the perpetrators. Tyranique initially identified Dameko Vesey, through recognition of his voice, as one of the masked men in the apartment. Hence, the admission of the brief comment by the detective that no evidence was discovered placing other possible suspects in the apartment did not affect the outcome of trial and reversal is not required.

*Vesey*, 2008 WL 723918 at *10.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, to the extent that Petitioner asserts that the trial court erred in admitting the detective's testimony under Michigan law, he merely alleges a violation of state law which does not entitle him to relief in federal court. As noted, state courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.

Second, Petitioner has not shown a violation of his constitutional rights. The challenged testimony by Detective Robbins was relevant and admissible under state law to explain the course of the police investigation and was not offered for the truth of the matter asserted. The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59, n. 9; *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985) ("The nonhearsay aspect [of an out-of-court statement] . . . raises no Confrontation Clause concerns."); *United States v. Powers*, 500 F.3d 500, 508 (6th Cir. 2007) ("testimony provided merely by way of background, or to explain simply why the Government

29

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

commenced an investigation, is not offered for the truth of the matter asserted and, therefore, does not violate a defendant's Sixth Amendment rights").

Petitioner also seems to allege that Detective Robbins' testimony was improper opinion testimony. Petitioner fails to cite any federal case establishing that the admission of opinion testimony offends fundamental principles of justice, and the Court is aware of none. There is generally no prohibition on a witness offering opinion testimony which goes to an ultimate issue in a case. Both the Federal and Michigan Rules of Evidence permit such testimony. *See* FED. R. EVID. 704(a); MICH. R. EVID. 704. Thus, there is no clearly established federal law as determined by the Supreme Court which suggests that the admission of such evidence violates the Constitution. *See Hopp v. Burt*, No. 03-10153, 2007 WL 162248, *9 (E.D. Mich. Jan. 16, 2007). Petitioner has not shown that the disputed testimony was improper or violated due process.

Moreover, the trial court instructed the jury about the proper consideration of the detective's testimony. As previously discussed, jurors are presumed to follow the trial court's instructions. *See Penry*, 532 U.S. at 799 (citing *Richardson*, 481 U.S. at 211); *Powell*, 469 U.S. at 66. Petitioner has not met his burden of showing that the admission of Detective Robbins' testimony violated his confrontation rights or otherwise deprived him of a fundamentally fair trial. *See, e.g., Davis v. Sherry*, No. 07-CV-15482, 2012 WL 2130909, *7 (E.D. Mich. June 12, 2012) (Cohn, J. denying habeas relief on similar claim). Habeas relief is not warranted on this claim.

### E.    **Effectiveness of Trial Counsel**

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to produce Maurice Leshawn Robinson and Cynthia Mack at trial, for failing to introduce

30

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

evidence of male DNA material from Tayquelea Roberson's fingernails, for failing to properly cross-examine Tanet Jordan, for failing to object to photographs of weapons seized from his residence, for failing to seek suppression of identification testimony from Tanet and Joyce Jordan, for failing to properly cross-examine those witnesses regarding their idenfications, for failing to call certain witnesses, and for failing to object to the claimed instances of prosecutorial misconduct.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to

31

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

undermine confidence in the outcome.  *Id.*   "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.  *Id*. at 788.

Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on these claims finding that Petitioner had not shown that trial counsel was ineffective.  The court explained in relevant part:

> Defendants first contend that trial counsel was ineffective because they failed to secure certain witnesses for trial. Specifically, defendants assert counsel secured the wrong Maurice Robinson.[FN9] At trial, Tanet Jordan asserted Maurice Robinson had broken a breakfast date with her and had implied knowledge of the murders. Tanet did not know Maurice's last name. In trying to identify this individual, police showed Tanet fifty-three photographs, which comprised the "mugshots" of all individuals by the name of Maurice they had available. Tanet selected one of the photographs as being the individual she discussed with police. Based on this information, Maurice E. Robinson was brought to the trial court for questioning. The only suggestion that the "wrong" Maurice Robinson was brought in for trial was testimony by Detective Patrick Bell that the photograph identified by Tanet was of Maurice Leshawn

32

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

Robinson. Notably, the Maurice Robinson defendants asserted was involved in the murders had three teardrop tattoos on his cheek. Maurice E. Robinson, the individual procured for trial, met this unique description. When questioned by counsel Robinson denied knowing Tanet and having made the alleged statements. Defendants assert that had the "correct" Maurice Robinson been secured and questioned that he would have acknowledged being familiar with Tanet and the prior statement attributed to him. However, this is mere speculation on the part of defendants. In addition, even if another Maurice Robinson was identified as the proper witness, had he denied the statement purportedly made to Tanet we would remain in the same position, with the alleged statement comprising inadmissible hearsay.

> FN9. Maurice E. Robinson was available and questioned by counsel at trial. Defendants contend that counsel procured the wrong individual and that Maurice Leshawn Robinson should have been made available.

Defendants also claim ineffective assistance of counsel because of the failure of their attorneys to provide for the attendance of Cynthia Mack at trial. Reportedly, while in the Washtenaw County Jail, Pittman made the acquaintance of Mack, another prisoner, and solicited her assistance in determining ways to make her story more "believable." Pittman denied recalling any such conversation and counsel implied that Mack would testify regarding this verbal exchange. However, Mack was never called to testify. Defendants assert on appeal that their counsel was ineffective for failing to subpoena Mack or seeking a continuance to locate her.

Although counsel asserts Mack was interviewed before trial and said she would testify that she provided Pittman with "tips" to make her lies more believable, there has been no submission provided regarding what the actual content of her purported testimony would have comprised. Obviously, counsel had access to Mack and did not call her. Defendants now speculate that this was a failure on the part of counsel rather than a conscious choice. "Decisions regarding what evidence to present ... are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v. Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). In addition, to the extent that testimony by Mack is sought to discredit Pittman regarding her veracity, the proffered evidence is merely cumulative. This is unnecessary, as both Pittman and the prosecutor acknowledged that she had lied on numerous occasions both in court and to police.

Defendant Dennis Vesey contends his counsel was ineffective by stipulating to DNA evidence rather than requiring expert testimony regarding the material found under Roberson's fingernails. Reportedly the DNA technician found evidence of male DNA under Roberson's fingernails and excluded defendants as contributors. The

33

prosecutor indicated she only intended to call the technician to testify that the most likely source of this DNA evidence was Roberson's minor child, Taurus Hill, Jr. Ultimately, the following stipulation was approved and entered by all counsel:

The DNA obtained from the beer can lids, glasses and cigarette butts tested in this case matched the known DNA samples of Taurus Hill and/or Tayquelea Roberson. Dennis Vesey, Dameko Vesey and Michael McGaha are excluded as having been DNA donors for the above mentioned items. No results were obtained from the television, remote control buttons or the shell casing due to insufficient and/or degraded DNA.

As discussed, supra, in conjunction with counsel's decision to not produce Mack at trial, decisions regarding what evidence to present are presumed to be matters of trial strategy. *People v. Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id.* at 76-77. In addition, defendant only speculates that the unidentified DNA could have come from a third party perpetrator in support of the defense theory. However, defendant fails to produce any evidence to support their assumption that the evidence might have been exculpatory. We would further note that defendants' counsel initially sought to preclude submission of any DNA evidence based on the inability of the prosecutor to comply with the deadlines imposed for pretrial discovery. Arguably, the agreement by counsel to the above stipulation was beneficial to defendants because it confirmed the lack of physical evidence linking defendants to the crime scene.

Defendant Dennis Vesey asserts trial counsel was ineffective in the cross-examination of Tanet Jordan. Defendant contends that proper questioning of this witness would have enabled counsel to impeach Pittman's testimony. Reportedly, before trial Pittman told Tanet that she never entered the victims' apartment and Tanet testified to this statement at the preliminary examination. Defendant asserts that if counsel had questioned Tanet on this discrepancy at trial, Pittman's testimony would have been critically impeached. However, given the plethora of admissions by Pittman at trial that she routinely lied at the preliminary examination, to police and others investigating these events, such a revelation at trial would not have the impact presumed by defendant on appeal. As noted previously, this Court will not second guess or substitute its judgment with regard to matters of trial strategy. Rockey, supra at 76-77.

Defendant Dennis Vesey further contends error regarding the admission of photographs of weapons seized from his residence. Notably, defendant incorrectly

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

references exhibit 33, which is actually a photograph of a scale taken from defendant's home and does not depict any weapons. Instead, we note that exhibit 31 reportedly depicts ammunition seized from the residence, which were not objected to by counsel.[FN10] The ballistics expert, Michigan State Police Detective Sergeant Robert Rayer, testified almost exclusively regarding the bullets retrieved from the crime scene. The only reference to the ammunition seized from defendant's home was testimony that bullets of the same caliber as the murder weapons had been seized from that location. On cross-examination, counsel for defendants were able to affirm that the weapons used in this crime had not been recovered and that the ammunition recovered from defendants' respective homes could not be matched to the bullets procured from the crime scene. Defendant further suggests that the admission of this evidence was contrary to the trial court's prior ruling regarding the exclusion of the weapons found at his home. However, although the trial court did exclude the weapons retrieved from defendant's home, it did not preclude "the tray, the scale, the cash, and the bullets" based on the trial court's determination "that that is part of the res gestae."

> FN10. This Court is unable to confirm the content of the cited exhibits based on their failure to append or provide them with the lower court record.

Defendant Dennis Vesey next argues in his Standard 4 brief that counsel was ineffective in failing to suppress identifications by Tanet and Joyce Jordan. Defendant asserts the identifications were the result of unduly suggestive pretrial procedures, which involved the repetitive showing of his photograph by police to the witnesses. Defendant asserts the impropriety of the identification procedure is demonstrated by the failure of the Jordans to identify him from photographs shown to them within days of the crime, yet selecting his photograph more than a year later as the perpetrator. Defendant also contends the photograph was unduly suggestive as he was the only light-skinned male with shoulder length braided hair and that the remaining photographs in the array depicted neighbors or persons associated with neighbors of the Jordans. Defendant further asserts Joyce Jordan's identification was influenced by the police offer of assistance when she was incarcerated.

Contrary to defendant's assertion, Tanet Jordan testified at the preliminary examination that she did identify his photograph from an array within days of the crime. Tanet again identified defendant's photograph from an array over one year later. Her indication that she identified defendant's picture "at least a hundred times" was clearly an exaggeration and was intended only to convey Tanet's assertion that she had consistently identified defendant as "Juan" in the photographic arrays presented by police. Joyce Jordan also identified defendant as "Juan" from a photographic array shown to her one day after the crimes occurred. Although one

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

year later, Joyce indicated that "Juan's" photograph was not among the photographs initially shown to her, she did identify defendant through a photograph as "Juan." More specifically, when questioned whether Joyce had seen the perpetrator's photograph but failed to identify it previously, she replied, "I didn't see his picture I seen the picture of the one of the guys [sic] that I thought was there...." Defendant provides no support or evidence for his assertion that the identifications by the Jordans a year after the event were the result of promises by police for assistance in exchange for the identifications.

Defendant Dennis Vesey suggests the manner and frequency of presentation of his photograph to these witnesses was unduly and impermissibly suggestive. Our Supreme Court has ruled "in order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v. Kurylczyk*, 443 Mich 289, 302-303; 505 NW2d 528 (1993). "The relevant inquiry ... is not whether the lineup photograph was suggestive, but whether it was unduly suggestive in light of all the circumstances surrounding the identification." *Id.* at 306. Although defendant indicates that his photograph, based on descriptions obtained, unfairly singled him out from others in the array, he fails to note that witnesses were shown "stacks" of photographic arrays and not just the one sheet containing his picture. Even if defendant appeared physically unique on the one array, there is no evidence that other photographs within the multiple arrays provided to witnesses did not coincide with his description or appearance. This Court has previously ruled "physical differences among the lineup participants do not necessarily render the procedure defective and are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other lineup participants." *People v. Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). In addition, "physical differences generally relate only to the weight of an identification and not to its admissibility." *Id.*

Defendant further contends the photographs were unduly suggestive because three of the individuals in the array were neighbors of the Jordans, despite the fact that Tanet Jordan had indicated to investigators that the perpetrators did not live in her apartment complex. Notably, the first array of photographs contained four photographs of individuals, besides defendants, who have not been identified as residing in the apartment complex. The photographic array displayed one year later did include three individuals, including codefendant McGaha, who lived in the apartment complex. However, Tanet Jordan specifically denied any familiarity with one of these individuals as a complex resident. Further, it was logical for police to include these individuals, as they were people who frequented the complex in order

36

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

to verify that identification of defendants was not merely a function of confusion based on familiarity. Finally, we would note that much of the witness testimony pertaining to identification and photographic arrays is confusing at best and can be attributed to their acknowledgment that they were uncooperative and frequently lied to police during the investigation, necessitating the repeated presentation of numerous photographic arrays in an attempt to obtain truthful statements.

Additionally, even if the photographic identification procedures were suggestive, independent bases exist to render the identifications reliable. The challenged witnesses were familiar with defendant, having observed him at the apartment complex on occasions prior to the murders. Although neither Tanet nor Joyce Jordan assert having a personal relationship with defendant Dennis Vesey, they both recognized him as the individual they knew as "Juan." This prior knowledge provided an independent basis for the subsequent in-court identifications. *People v. Davis*, 241 Mich App 697, 702-703; 617 NW2d 381 (2000) (citations omitted).

Ultimately, defendant's argument is merely a red herring. The identifications challenged by defendant Dennis Vesey were not made by eyewitnesses to the actual crime. The photographic presentations were an attempt by police to identify people in the vicinity of the crime scene, particularly given the reluctance of residents in the apartment complex to become involved or cooperate. Although the record reflects that Joyce Jordan consistently identified photographs of defendant, the challenged identifications did not serve to convict him. Rather, substantial evidence by an accomplice, Pittman, placed defendant Dennis Vesey in the apartment with the gun. Therefore, even if we were to conclude that there were not sufficient independent bases for these identifications or that the photographic lineups were suggestive, reversal is not warranted because harmless error analysis applies based on the existence of overwhelming evidence of defendant's guilt. *People v.. Winans*, 187 Mich App 294, 299; 466 NW2d 731 (1991). Consequently, defendant is unable to demonstrate that he was prejudiced by counsel's failure to bring a motion to suppress the identifications, as a claim of ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion. *People v. Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

Defendant Dennis Vesey argues that trial counsel was also ineffective in questioning Tanet Jordan, suggesting that further inquiry by counsel would have demonstrated the witness confused defendant's vehicle with that of Jovan Hurston. The difficulty with this premise is the fact that Pittman's testimony contradicts this theory coupled with the identification by both Pittman and Tanet Jordan of defendant's beige SUV in the parking lot immediately before the crimes occurred. In contrast, it is undisputed that Hurston drove a burgundy Jeep Cherokee, which is unlikely to be

37

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

confused with a beige Envoy. When Hurston drove Pittman back to the complex before the murders, she requested he park a distance from the apartments so that her mother would not observe his vehicle. Consequently, it was reasonable for defense counsel to limit questioning regarding Hurston's vehicle, as it would merely have served to reinforce the assertions of witnesses regarding the presence of defendant's vehicle at the crime scene. *Rockey, supra* at 76-77.

Defendant Dennis Vesey further contends that his counsel was ineffective in failing to call certain individuals as witnesses. Specifically, he asserts his trial counsel should have called the minor children, Dakaisia and Jasmine, as witnesses to the murders to testify that the perpetrators were masked. He further indicates Demetrius Simms should have been placed on the stand for questioning regarding a phone call she received from Pittman and that Terry Joplin and Isaiah Kershaw should have been called to testify regarding vehicles they observed at the scene earlier on the night of the murders. Once again, we note that the determination regarding what witnesses and evidence to present are matters of trial strategy that will not be second-guessed in hindsight. *Rockey, supra* 76-77.

Allegedly, Demetrius Simms received a phone call from Pittman days after the murders and left a message for her stating, "I saw a boy that looked just like your son. Tell him he's got nothing to worry about." Simms disavowed any understanding of the meaning of the message when questioned by police. Defendant construes this statement to be exculpatory and suggestive that Pittman lied to police regarding her identification of the perpetrators. However, this is mere speculation. Defendant fails to explain how the failure to present this witness would amount to the ineffective assistance of counsel, as it cannot be demonstrated that the statement had any relationship to the murders or Pittman's involvement in the crimes. Viewed even in a positive light, the proposed testimony was merely cumulative by implying what had already been acknowledged to be Pittman's penchant for dishonesty.

Defendant Dennis Vesey further contends counsel was ineffective for failing to present the testimony of two of the minor witnesses to the murders, Dakaisia and Jasmine. Primarily, defendant contends that their testimony that the perpetrators were masked supported the assertion that Pittman fabricated her testimony and served to bolster the testimony of Tyranique. However, defendant ignores the fact that the eldest of the three minor witnesses did testify regarding the perpetrators being masked when entering the apartment, making testimony by the additional witnesses merely cumulative. In addition, it was objectively reasonable for counsel to not call these young children to the stand as it could have served to alienate members of the jury and did not deprive defendant of a substantial defense.

38

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

Defendant Dennis Vesey further alleges counsel was ineffective for failing to call Joplin and Kershaw to testify regarding their observation of a silver Durango or tan Envoy in the apartment complex parking lot on the night of the murders. Notably, defendant does not contend that these individuals could identify ownership or associate specific individuals with the vehicle. Defendant contends that his SUV, a beige Yukon, was not present on the night of the murders. Throughout the trial witnesses identified several different vehicle models in the parking lot just prior to the murders. Despite inconsistencies in identifying the model of the vehicle they observed, all witnesses concurred that the vehicle was an SUV and either silver or tan in color. Significantly, all the varying models or vehicle makes identified by witnesses are substantially similar in size, design and manufacturer. Defendant fails to demonstrate how additional testimony by these individuals would have proven his absence from the crime scene based on confusion regarding the model of the vehicle observed given the overwhelmingly consistent descriptions of the vehicle elicited from witnesses.

*Vesey*, 2008 WL 723918 at *11-16.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.

Petitioner first asserts that trial counsel was ineffective for failing to produce Maurice Lashawn Robinson and Cynthia Mack to testify at trial. Petitioner claims that both witnesses would have provided exculpatory or favorable defense testimony. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d 251 at 258. "A purportedly strategic decision is not objectively reasonable when

39

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

the attorney has failed to investigate his options and make a reasonable choice between them." *Id.* (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)); *see also Wiggins*, 539 U.S. at 526.

That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

As to the production of Maurice Robinson, the record indicates that Maurice E. Robinson was produced at trial based upon Tanet Jordan's identification of him and because he fit the "teardrop tattoo" description provided by the defendants. Given such circumstances, it was reasonable for counsel to believe that the proper Maurice Robinson appeared at trial. As the Supreme Court has stated, "[t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus making particular investigations unnecessary. . . . Those decisions are due a heavy measure of deference." *Cullen*, 131 S. Ct. at 1407 (reversing grant of habeas relief on ineffective assistance of counsel claim) (citations omitted). Petitioner has failed to establish that counsel was deficient in this regard.

Additionally, while Petitioner believes that Maurice Lashawn Robinson was the person who should have been produced for trial, he has not offered evidence to support that assertion, nor has he provided an affidavit from Maurice Lashawn Robinson indicating that he would have provided testimony favorable to the defense. Conclusory allegations are insufficient to establish that counsel

40

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

was ineffective under the *Strickland* standard. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir.

2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771

(6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal

habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and

conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas

proceedings). Petitioner has failed to establish that counsel erred and/or that he was prejudiced by

counsel's conduct.

As to Cynthia Mack, the record reveals that trial counsel was aware of her potential use as

a witness and spoke to her, and that counsel cross-examined Nerissa Pittman whether Mack gave

her suggestions about how to make her testimony more believable, but ultimately did not call Mack

to testify at trial. Given Mack's previous status as an inmate, an apparent difficulty in locating her

and/or securing her presence at trial, and the fact that her proposed testimony was only for

impeachment, counsel's decision not to call her was reasonable. Petitioner has not overcome the

presumption that counsel's conduct was sound trial strategy. *See, e.g., Roush v. Burt*, 313 F. App'x

754, 761 (6th Cir. 2008) (finding no reason to deem counsel ineffective for failing to call a witness

where the record showed that counsel had investigated the witness). The fact that counsel's strategy

was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286

F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as

the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Petitioner has also not shown that he was prejudiced by counsel's conduct in this regard.

While Petitioner claims that Cynthia Mack would have provided testimony to impeach Nerissa

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

Pittman's credibility, he has not provided an affidavit or other statement from Mack as to her proposed testimony. As noted, conclusory allegations are insufficient to justify habeas relief. Moreover, the jury was well aware of Pittman's admitted history of lying to the authorities about the incident, her credibility issues, and the shortcomings of her testimony. Mack's purported testimony would have provided little, if any, further impeachment value to the defense. Petitioner has failed to establish that counsel was ineffective.

Petitioner also asserts that trial counsel was ineffective for agreeing to the DNA stipulation offered at trial instead of seeking to introduce evidence that male DNA was recovered from Tayquelea Roberson's fingernails. Petitioner, however, has not shown that counsel erred and/or that he was prejudiced by counsel's conduct in this regard. The DNA stipulation that none of the defendants' DNA was found at the victim's residence was clearly a matter of trial strategy – and was reasonable and beneficial to the defense. Moreover, any argument that the DNA belonged to an unidentified third-party male was speculative and could have been countered by the prosecution's claim that the DNA was from the baby, not one of the perpetrators. Petitioner has not shown that counsel was ineffective.

Petitioner further asserts that trial counsel was ineffective for failing to properly cross-examine Tanet Jordan and use her preliminary examination testimony to impeach Nerissa Pittman's testimony about her entry into the victims' residence. The cross-examination of witnesses, however, is generally a matter of trial strategy left to the professional discretion of counsel. *See Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012) (stating that "most cross-examinations can be improved but if that were the standard of constitutional effectiveness, few would be the counsel

42

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

whose performance pass muster" and citing cases).  While further questioning of Tanet Jordan may have provided further impeachment evidence, it was not crucial to the defense case and counsel may have reasonably determined that it was unnecessary due to the extensive questioning of Pittman herself.  It is not for this Court on habeas review to second-guess counsel's strategy in hindsight. Moreover, given the other impeachment evidence and attacks on Pittman's credibility, it cannot be said that Petitioner was prejudiced by counsel's conduct in this regard.

Petitioner next asserts that counsel was ineffective for failing to object to a photograph of weapons seized from his residence.  Petitioner, however, fails to specify what exhibit contained such a photograph and the record before this Court does not indicate whether such a photograph was admitted at trial.  As noted, conclusory allegations are insufficient to warrant habeas relief.  *See, e.g., Cross*, 238 F. App'x at 39-40; *Workman*, 178 F.3d at 771.  Moreover, Deputy Campbell testified about the search of Petitioner's residence, but only discussed a scale, marijuana, shotgun shells, handgun rounds or bullets, and cash.  Detective Rayer provided forensic testimony about the recovered ammunition and the types of guns associated with such ammunition, but did not testify about any weapons seized from Petitioner's residence.  Thus, even if the disputed photograph was admitted or displayed, counsel may have reasonably decided not to object in order to avoid drawing attention to the matter in front of the jury.  Moreover, the prosecution never claimed that the police had recovered the murder weapon and defense counsel had the opportunity to argue that no such weapons had been found.  Petitioner has failed to establish that counsel erred or that he was prejudiced by counsel's conduct as to this issue.

43

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

Petitioner also asserts that trial counsel was ineffective for failing to seek suppression of identification testimony from Tanet and Joyce Jordan and for failing to properly cross-examine those witnesses regarding their pre-trial identifications.  A conviction based on identification testimony following a pre-trial identification violates due process when the pre-trial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384 (1968).  If a witness is shown an unduly suggestive photographic lineup, the witness's in-court identification must be suppressed unless the identification has an independent origin untainted by the suggestive lineup. *United States v. Wade,* 388 U.S. 218, 241 (1967).

The United States Court of Appeals for the Sixth Circuit follows a two-step analysis in determining whether an identification is admissible.  *See United States v. Crozier,* 259 F.3d 503, 510 (6th Cir. 2001) (citing *Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir. 1994)).  A court must first determine whether the identification procedure was suggestive.  *Id.*  If the court finds that the procedure was suggestive, then it must determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible.  *Id.*  To determine reliability, the court weighs five factors:  "(1) the opportunity of the witness to view the perpetrator during the crime; (2) the witness's degree of attention to the perpetrator; (3) the accuracy of the witness's prior descriptions of the perpetrator; (4) the level of certainty demonstrated by the witness when identifying the suspect; and (5) the length of time between the crime and the identification."  *Id.* (citing *Neil v. Biggers,* 409 U.S. 188, 199 200 (1972)).  "'Against these factors is to be weighed the

44

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

corrupting effect of the suggestive identification itself.'" *Id.* (quoting *Manson v. Brathwaite,* 432

U.S. 98, 114 (1977)); *see also Carter v. Bell,* 218 F.3d 581, 605 (6th Cir. 2000).

In this case, Petitioner has failed to show that the photographic arrays were improper. He

has not alleged facts or presented evidence to support his claim that the arrays were unduly

suggestive. As noted, conclusory allegations are insufficient to warrant federal habeas relief. *See*

*Cross*, 238 F. App'x at 39-40; *Workman*, 178 F.3d at 771. The record indicates that Tanet Jordan

and Joyce Jordan identified Petitioner in photographic arrays within days of the crime and again one

year later. Petitioner has not shown that the arrays were unduly suggestive or that their use by police

was improper. Furthermore, the record indicates that there was an independent basis for the

witnesses' in-court identifications – their familiarity with him from the neighborhood and their prior

knowledge of him as someone named "Juan." The witnesses also remained consistent in their

identifications. Their identifications were thus reliable and had an independent basis.

Given that the pre-trial identification procedures were not unduly suggestive and there was

an independent basis for Tanet Jordan's and Joyce Jordan's identifications of Petitioner as someone

they knew as "Juan," any motion to suppress those identifications would have been futile. Counsel

cannot be deemed ineffective for failing to make a futile or meritless motion. *See United States v.*

*Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Additionally, the record demonstrates that counsel

cross-examined the witnesses about their identifications. The decision to attack the credibility of

the identifications through cross-examination, rather than to seek suppression of the identifications,

was a reasonable trial strategy which defeats Petitioner's claim. *See, e.g., Killebrew v. Endicott*, 992

F.2d 660, 665 (7th Cir. 1993). Petitioner has failed to establish that counsel was ineffective.

45

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

Petitioner next asserts that trial counsel was ineffective for failing to call certain witnesses at trial. Specifically, he believes that counsel should have called Dakaisia Roberson and Jasmine Harris, the younger children at the victims' residence, to testify that the perpetrators wore masks, Demitrius Simms to testify about a phone call from Nerissa Pittman saying that she saw a boy who looked like her son and he shouldn't be worried, and Terry Joblin and Isaiah Kershaw to testify about a vehicle or vehicles they observed near the scene on the night of the crime. As discussed, counsel's decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy – although they must be reasonable. *See Roe*, 528 U.S. at 481; *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden*, 92 F. App'x at 311; *Hutchison*, 303 F.3d at 749.

Petitioner has failed to establish that counsel erred or that he was prejudiced by counsel's conduct in not calling these potential witnesses to testify at trial. As to the minor children, counsel may have reasonably determined that their testimony was cumulative to Tyranique Hill's testimony, that it would have been of questionable value due to their young ages at the time of the crime, and/or that calling them to the stand would have alienated the jury. As to Simms, counsel may have reasonably determined that testimony about Pittman's phone call was vague and would not have benefitted the defense. Furthermore, there is no indication that the call related to the crime such that any argument to that effect would have been speculative – particularly given that Simms denied knowing the meaning of the message or anything about the murders. As to Joplin and Kershaw, counsel may have reasonably determined that their testimony was unnecessary because it was

46

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

cumulative and as non-specific as other witnesses' testimony about the presence of a silver or tan SUV near the scene at the time of the crime. Moreover, there is no indication that Joplin or Kershaw could have identified the owners or occupants of the vehicle or vehicles they observed that evening. Petitioner has not shown that counsel was ineffective for failing to call these additional witnesses or that he was deprived of a substantial defense. To be sure, counsel presented Petitioner's alibi defense, identified other people in the area who could have committed the crime, challenged the prosecution witnesses and noted discrepancies in the descriptions of the perpetrators and their vehicle, and argued the concept of reasonable doubt.

Lastly, Petitioner asserts that trial counsel was ineffective for failing to object to the claimed instances of prosecutorial misconduct. Given the Michigan Court of Appeals' and this Court's determination that those underlying claims lack merit, *see* discussion *supra*, Petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed ineffective for failing to make a futile motion or objection. *Steverson*, 230 F.3d at 225. Petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

**F.    Denial of Motion for New Trial/Newly-Discovered Evidence**

Lastly, Petitioner asserts that he is entitled to habeas relief because the state trial court denied his motion for new trial based upon newly-discovered evidence – a letter from Nicholas Ross to co-defendant Dennis Vesey and a letter from Nerissa Pittman to Sharmik Willis – without conducting an evidentiary hearing. Given that a federal habeas court may not correct a state court's misapplication of its own law, however, a state trial court's denial of a motion for a new trial based

47

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

upon newly-discovered evidence is generally not a ground for habeas relief. *See Kirby v. Dutton*,
794 F.2d 245, 246–47 (6th Cir. 1986); *Monroe v. Smith*, 197 F. Supp. 2d 753, 763 (E.D. Mich.
2001).

**V.    Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas
relief on the claims contained his petition and the petition must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.
*See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only
if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.
§ 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if
the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim
debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies
this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to
deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In
applying this standard, a court may not conduct a full merits review, but must limit its examination
to a threshold inquiry into the underlying merits. *Id*. at 336-37. Having conducted the requisite
review, the Court concludes that Petitioner has made a substantial showing of the denial of a
constitutional right as to his first habeas claim regarding the exclusion of evidence of third-party
culpability, but has not made a substantial showing of the denial of a constitutional right as to his
remaining claims. A certificate of appealability is therefore warranted in part.

Accordingly;

48

Dennis Vesey v. Debra Scutt
Case No. 2:09-CV-14207

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED**

**WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED IN PART**

and **DENIED IN PART**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: December 27, 2012

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record
on December 27, 2012, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Assistant

49